ROBERT S. BROWN, State Bar No. 187845
**ROBERT STANFORD BROWN, APC**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California 90010
Telephone: (213) 745-8641
Facsimile: (213) 261-3906
rstanfordbrown@gmail.com

Attorney for Plaintiffs LaTanya Travis and Jayden England

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LATANYA TRAVIS and JAYDEN ENGLAND,

Plaintiff,

vs.

CITY OF LOS ANGELES OF LOS ANGELES, a public entity, LAPD OFFICER BURGOS (#42617), LAPD OFFICER CARDIO (#43605) and DOES 1 through 10, Inclusive,

Defendants.

CASE NO.:

**COMPLAINT FOR DAMAGES:**

1. Violation of 4th Amendment—Unreasonable Detention (42 U.S.C. §1983);
2. Violation of 4th Amendment—Failure to Intervene (42 U.S.C. §1983);
3. Violation of 4th Amendment—Excessive Force (42 U.S.C. §1983);
4. Violation of 14th Amendment Equal Protection Clause – Race Discrimination/Racial Profiling
5. Municipal Liability (42 U.S.C. §1983-Unconstitutional Custom or Policy
6. Municipal Liability (42 U.S.C. §1983-Failure to Train
7. Bane Act
8. False Imprisonment/False Arrest
9. Battery
10. Intentional Infliction of Emotional Distress

) (DEMAND FOR JURY TRIAL)
)
)
)

I.

## COMPLAINT

Plaintiffs LaTanya Travis and Jayden England ("Plaintiffs") bring this lawsuit pursuant to 42 U.S.C. §1983 to vindicate their rights to be free from unreasonable and unlawful detention, racial profiling (Jayden England) and excessive force (LaTanya Travis) by Los Angeles Police Department (LAPD) officers and/or supervisors acting under color of law.

## INTRODUCTION

1. The Fourth and Fourteenth Amendments to the United States Constitution protects the rights of individuals against unlawful seizures.

2. In this case, Los Angeles Police Department (LAPD) officers tasked with preserving those rights instead used an unconstitutional detention against Plaintiff England; racially profiled England; and used excessive force against Plaintiff Travis.

3. In short, this case is about vindicating Plaintiffs' constitutional rights.

## VENUE AND JURISDICTION

4. This action is brought under 42 U.S.C. §§1983, and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 29 U.S.C. §§1331 and 1343(a)(1), (2), (3) and (4). State claims are brought under pendant or supplemental jurisdiction.

5. Venue is proper in the Central District of California. The facts and circumstances underlying all claims, as well as the injuries, took place within the geographic jurisdiction of this Court.

6. On February 4, 2026, Plaintiffs filed a Claim for Damages with the City. Plaintiffs received a written notice of its rejection, dated March 11, 2026. Consequently,

under California Government Code § 945(a)(2), Plaintiffs have timely filed this Complaint.

## II.

## PARTIES

7. At all relevant times, Plaintiffs LATANYA TRAVIS and JAYDEN ENGLAND ("Plaintiffs") were residents of the City of Los Angeles in California.

8. Plaintiffs are informed, believe and allege that, at all relevant times, THE CITY OF LOS ANGELES ("the CITY") is a governmental entity organized under the laws of the State of California. The CITY is responsible for and administers the CITY'S Police Department ("LAPD"), which, through LAPD Police Chief JIM MCDONNELL (and formerly MICHAEL MOORE), promulgates policies and practices for the arrest of criminal suspects. At all times, the CITY possessed the power and authority to adopt policies and prescribe rules, regulations, policies and practices affecting all facets of the training, supervision, control, employment, assignment, discipline, and removal of individual members of the LAPD. The CITY was also charged with the responsibility to assure that these policies, practices, rules and regulations of the LAPD followed the laws and Constitution of the United States and the State of California.

9. Defendant LAPD Officers BURGOS, CARDIO, DOES 1 through 10 were, at all relevant times, officers, supervisors and/or employees of Defendant CITY OF LOS ANGELES and the LAPD. At all relevant times, they were acting under color of law within the course and scope of their respective duties as deputies or supervisors of the LAPD and with complete authority and ratification of Defendant CITY OF LOS ANGELES.

10. Plaintiff is informed, believes and alleges that, Defendants sued as DOES 1 through 10, inclusive, were and are officers, supervisors, agents or employees of Defendant CITY OF LOS ANGELES and LAPD and were, at all relevant times, acting in the course and scope of their employment and agency. Plaintiffs allege that each

Defendant named as a "DOE" was in some manner responsible for the acts and omissions alleged. At this time, Plaintiffs are ignorant of the true names and capacities of the DOE Defendants, and upon discovery of the same, she will ask leave of this Court to amend this Complaint to alleges such facts, full names and responsibility when that information is ascertained.

11. Defendants and DOES 1 through 10 were, at all relevant times, CITY OF LOS ANGELES and LAPD officers, supervisors, and/or employees. They were charged by law and were responsible for fairly enforcing and upholding the law to protect and serve members of the community; the supervision of officers and other employees under their command in the LAPD; for the supervision, training, discipline and corrective action(s) of persons, officers, supervisors, agents, or employees working under their chain of command within said CITY OF LOS ANGELES and LAPD; for creating or promulgating LAPD policies; and, for investigating, monitoring and reporting the misconduct of their subordinates and/or fellow officers.

12. Plaintiffs are informed, believe and allege, that at all relevant times, Defendants DOES 1 through 10, inclusive, are, and at all relevant times, were officers, supervisors, agents or employees of Defendant CITY OF LOS ANGELES and LAPD, and were acting within the course and scope of their employment and/or agency and under color of state law. Each of the Defendants and DOE Defendants caused and is responsible for the unlawful conduct in personally participating in the conduct or acting jointly and in concert with others who did so by authorizing, acquiescing, condoning, acting, omitting or failing to act to prevent the unlawful conduct and by promulgating or failing to promulgate policies and procedures. These actions or omissions resulted in unlawful conduct through the failure—with deliberate indifference to Plaintiffs' rights—to initiate and maintain adequate supervision, training, or compliance with responsibilities and duties; failure to maintain proper and adequate policies, procedures

and protocols; and by ratifying and condoning the unlawful conduct performed by officers, supervisors, agents or employees under their direction and control.

13. Plaintiffs are informed, believes, and alleges, that at all relevant times, Defendants, and each of them, were the agents, servants, joint venturers, partners, or employees, of each other Defendant, and as such, were acting within the course and scope of their agency, employment or joint venture. The respective principals subsequently ratified all acts, conduct or omissions and accepted the benefits of those ratifications.

14. Plaintiffs are informed, believe, and allege, that each of the Defendants designated as a DOE is responsible, in some manner, for the events and happenings referred to, proximately causing the injuries and damages to Plaintiffs as alleged.

15. At all times mentioned, Defendant DOES 1 through 10, were acting under color of the laws, statutes, ordinances, regulations, customs, and usages of the United States Constitution, State of California and CITY OF LOS ANGELES pursuant to their official authority and their policies, procedures, practices, and/or customs established by directives and/or other acts of the LAPD and Defendant CITY OF LOS ANGELES.

## III.

## FACTS COMMON TO ALL CAUSES OF ACTION

16. Plaintiff JAYDEN ENGLAND ("ENGLAND") and LATANYA TRAVIS were, at all relevant times, residents of the City of Los Angeles in California.

17. At the time of the events alleged herein, ENGLAND was sixteen (16) years old, attended Notre Dame High School, was a straight-A student, and had never previously been arrested.

18. Plaintiff LATANYA TRAVIS ("TRAVIS") is ENGLAND’S grandmother.

/ / /

/ / /

19. On August 23, 2025, at approximately 11:00 p.m., ENGLAND and TRAVIS were at or near their residences in southern part of Los Angeles, California. England and Travis are Black/African-American.

20. TRAVIS asked ENGLAND to check her automobile to determine whether her cellular telephone charger was inside the vehicle. The vehicle was a 2014 Genesis. It was legally parked in front of TRAVIS' home.

21. ENGLAND opened the driver's-side door, sat in the driver's seat, and began looking for TRAVIS's telephone charger. ENGLAND was not driving the vehicle.

22. Approximately thirty seconds after ENGLAND entered the vehicle, Los Angeles Police Department officers approached the location in their vehicle. The involved officers were assigned to Los Angeles Police Department's Newton Division. ENGLAND is informed and believes that the officers who illegally detained him are not Black/African-American.

23. ENGLAND's friend, Juan Barajas, a Latino male, was standing next to the passenger side of TRAVIS' vehicle. Although Barajas was immediately adjacent to the vehicle, the officers did not detain, search, or otherwise seize Barajas.

24. Approximately three officers initially confronted ENGLAND. Without ENGLAND's consent, one of the officers opened the driver's-side door and ordered ENGLAND out of the vehicle. ENGLAND complied with the officers' commands.

25. An officer took ENGLAND by the arm, moved him to the front of the vehicle, and subjected him to a pat-down search. ENGLAND attempted to speak with the officers to determine why he was being detained.

26. Rather than explaining an objectively reasonable basis for ENGLAND's detention, the officers told him, in substance, that the presence of his family was "not helping."

27. At least one of the officers further told ENGLAND, in substance, "There is nothing your family can do for you right now," and that the best thing his family could

do was move back. However, ENGLAND's family members were not advancing toward ENGLAND or physically interfering with the officers.

28. One of the officers claimed that ENGLAND had thrown a firearm or weapon across the driver's seat of the Genesis. No firearm or other weapon was found on ENGLAND during after a pat-down search. ENGLAND was not arrested for possessing a firearm or other weapon.

29. ENGLAND was handcuffed and remained handcuffed for approximately thirty minutes. The handcuffs placed upon ENGLAND were extremely tight. While handcuffed, ENGLAND began to panic and became concerned that the incident would become part of his record.

30. When ENGLAND turned to speak with an officer, he was ordered to turn back around. ENGLAND remained detained and restrained notwithstanding the absence of a weapon on his person and his compliance with the officers.

31. An officer also asserted that the Genesis was not registered. That assertion was incorrect.

32. After a supervising sergeant, identified in the investigation as Sergeant Lopez, arrived, TRAVIS gave officers permission to retrieve the registration and insurance documents from the vehicle and permitted the officers to search the passenger side of the vehicle for a firearm. No firearm was located.

33. The officers ultimately removed ENGLAND's handcuffs and released him without arrest. Immediately after being released from the handcuffs, ENGLAND went inside the residence.

34. The detention and handcuffing caused ENGLAND substantial fear, panic, anxiety, sadness, and emotional distress. Before this incident, ENGLAND did not fear police officers and respected police officers for performing their duties. However, because of this incident, the presence of police officers cause ENGLAND fear and anxiety. ENGLAND has questioned why he was subjected to the detention and has

expressed the emotional impact of the encounter by asking, in substance, "What did I do to deserve this?"

35. TRAVIS was present when officers detained ENGLAND. After hearing an officer claim that ENGLAND had thrown a weapon across the vehicle, TRAVIS began recording the officers' interaction with ENGLAND. TRAVIS wanted a record of the interaction because she was concerned for ENGLAND'S safety.

36. TRAVIS remained in front of her vehicle while recording. TRAVIS did not approach the location where officers were holding ENGLAND and did not physically interfere with their detention of him. TRAVIS was exercising her legal right to observe and record police activity occurring in a public location.

37. During the encounter, Defendant OFFICER BURGOS intentionally made physical contact with TRAVIS by forcefully and violently shoving her backwards. In so doing, he caused her to lose her balance and injure her ankle. The physical contact used against TRAVIS by BURGOS was not invited or consented to by TRAVIS.

38. At the time OFFICER BURGOS made physical contact with TRAVIS, she was not committing a crime, threatening the officers, attempting to flee, or physically interfering with the officers.

39. TRAVIS called 911 to report the officer's conduct. TRAVIS subsequently spoke with Sergeant Lopez and informed him that she wanted to make a complaint concerning the officers' conduct. Sergeant Lopez provided TRAVIS with a card containing the officers' names and advised TRAVIS that he would investigate and contact her. Sergeant Lopez did not subsequently contact her concerning the promised investigation.

40. At all relevant times, the individual officer Defendants were acting under color of state law and within the course and scope of their employment as law-enforcement officers. Plaintiffs are presently unaware of the identities of all officers who participated in, assisted with, directed, approved, or failed to intervene in the

conduct alleged herein and therefore may designate those officers as DOE Defendants once their identities are learned through discovery.

## IV.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. §1983)—UNREASONABLE DETENTION

**[Plaintiff Jayden England as against Defendants Officer Burgos, Officer Cardio and DOES 1-10]**

41. ENGLAND re-alleges and incorporates all of the allegations contained in paragraphs 1-40.

42. This action is brought pursuant to 42 U.S.C. §1983, and the Fourth Amendment of the United States Constitution. The Fourth Amendment protects ENGLAND against unreasonable searches and seizures by law-enforcement officers.

43. By ordering ENGLAND from the parked vehicle, taking physical control of him, moving him to the front of the vehicle, frisking him, placing him in handcuffs, and detaining him for approximately thirty minutes without any reasonable, articulable suspicion, Defendants seized ENGLAND within the meaning of the Fourth Amendment.

44. ENGLAND was compliant with the officers and did not attempt to flee or resist. ENGLAND did not throw anything into TRAVIS' vehicle, nor did he make any physical motion in which he appeared to be throwing contraband or any item into the vehicle. Moreover, ENGLAND was not found in possession of a firearm, weapon, or contraband. Despite the absence of a weapon on ENGLAND and his compliance with the officers' commands, Defendants continued to restrain ENGLAND in handcuffs for approximately thirty minutes.

45. The scope, manner, and duration of ENGLAND's detention exceeded that reasonably necessary to investigate the circumstances confronting the officers. To the

extent Defendants contend that the detention was based upon an officer's purported (false) observation that ENGLAND threw a firearm across the seat, however, no firearm was recovered in the vehicle.

46. Defendants' continued detention and restraint of ENGLAND was unreasonable under the totality of the circumstances and violated ENGLAND's rights under the Fourth and Fourteenth Amendments.

47. As a direct and proximate result of the actions of these Defendants, ENGLAND suffered the violation of his constitutional rights. As a result of the actions or omissions of these Defendants, ENGLAND suffered physical, mental and emotional injuries, some of which are ongoing.

48. Defendants acted recklessly, with deliberate indifference to ENGLAND's constitutional rights and should have punitive damages assessed against them. The acts of these Defendants were willful, wanton, malicious and oppressive justifying the award of exemplary and punitive damages.

49. By virtue of the provisions of 42 U.S.C. § 1988, ENGLAND is entitled to an award of reasonable attorney's fees and costs, according to proof.

## V.

## SECOND CLAIM FOR RELIEF

## FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH AMENDMENT

**[Plaintiff Jayden England as against DOES 1-10]**

50. ENGLAND re-alleges and incorporates all of the allegations contained in paragraphs 1-49.

51. Upon information and belief, DOES 1-10 observed ENGLAND'S unlawful detention. ENGLAND is informed and believes that DOES 1-10 knew that ENGLAND had not violated the law at the time of his unlawful detention.

52. ENGLAND is informed and believes that DOES 1-10 allowed ENGLAND

to be unlawfully detained even though they knew that he had not violated any law.

53. As police officers, DOES 1-10 had the power, discretion and authority to intervene and report ENGLAND's unlawful detention by other LAPD officers, including Officer Burgos and Cardio and DOES 1-10. However, DOES 1-10 chose not to intervene on ENGLAND'S behalf.

54. Defendants had the affirmative duty to intervene to prevent an unlawful detention and arrest pursuant to *U.S. v. Koon,* 34 F. 3d 1416 (9th Cir. 1994).

55. Defendants acted with deliberate indifference to the rights of ENGLAND by showing conscious disregard for his liberty. Thus, Defendants have violated ENGLAND'S constitutional rights and proximately caused the damages set forth in the incorporated paragraphs, all in violation of 42 U.S.C. § 1983.

56. As a direct and proximate result of the actions of these Defendants, ENGLAND suffered the violation of his constitutional rights. As a direct and proximate cause of the acts and omissions of Defendants, ENGLAND suffered physical, mental and emotional injuries, some of which are ongoing.

57. The acts of these Defendants were willful, wanton, malicious and oppressive justifying the award of exemplary and punitive damages. By virtue of the provisions of 42 U.S.C. § 1988, ENGLAND is entitled to an award of reasonable attorney's fees and costs, according to proof.

## VI.

## THIRD CLAIM FOR RELIEF

## EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. § 1983)

**[Plaintiff LaTanya Travis as against Defendant Officer Burgos and DOES 1-10]**

58. TRAVIS re-alleges and incorporates all of the allegations contained in paragraphs 1-57.

59. At the time of the incident, TRAVIS was observing and recording the officers' detention of ENGLAND from in front of her vehicle.

60. TRAVIS did not physically interfere with the officers' detention of ENGLAND. TRAVIS did not pose an immediate threat to the safety of OFFICER BURGOS, any other officer, or any member of the public. TRAVIS was not attempting to flee, evade arrest, or intervene in the unlawful detention of ENGLAND.

61. Notwithstanding the absence of any need to use physical force against TRAVIS, OFFICER BURGOS forcefully and violently shoved TRAVIS. The force employed against TRAVIS was objectively unreasonable under the totality of the circumstances and was unnecessary to accomplish any legitimate law-enforcement purpose.

62. OFFICER BURGOS's use of force against TRAVIS constituted an unreasonable seizure and excessive force in violation of the Fourth Amendment.

63. As a direct and proximate result of the actions of these Defendants, TRAVIS suffered the violation of her constitutional rights. As a result of the actions or omissions of these Defendants, TRAVIS suffered physical, mental and emotional injuries, some of which are ongoing.

64. Defendants acted recklessly, with deliberate indifference to TRAVIS' constitutional rights and should have punitive damages assessed against them. The acts of these Defendants were willful, wanton, malicious and oppressive justifying the award of exemplary and punitive damages.

65. By virtue of the provisions of 42 U.S.C. § 1988, TRAVIS is entitled to an award of reasonable attorney's fees and costs, according to proof.

/ / /

/ / /

/ / /

/ / /

## VII.

## FOURTH CLAIM FOR RELIEF

## VIOLATION 14th AMENDMENT EQUAL PROTECTION CLAUSE—RACE DISCRIMINATION/RACIAL PROFILING (42 U.S.C. § 1983)

**[Plaintiff Jayden England as against Defendants Officer Burgos, Officer Cardio and DOES 1-10]**

66. ENGLAND re-alleges and incorporates all of the allegations contained in paragraphs 1-65.

67. The Equal Protection Clause of the Fourteenth Amendment guarantees ENGLAND the right to receive the equal protection of the laws without intentional discrimination because of his race.

68. ENGLAND, an African-American/Black male, is a member of a protected racial class.

69. At all relevant times, Defendants BURGOS, CARDIO and DOES 1-10 were acting under color of state law in their capacities as law-enforcement officers.

70. Defendants knew or perceived ENGLAND's race when they subjected him to the detention, search, handcuffing, and continued investigation alleged herein.

71. ENGLAND is informed and believes that Defendants intentionally treated ENGLAND differently from his friend, BARAJAS a Latino male. BARAJAS was a similarly situated individual present at the same automobile and during the same incident. Specifically, while BARAJAS was immediately adjacent to the passenger side of the same vehicle when the officers arrived, Defendants did not detain, frisk, handcuff, or otherwise subject BARAJAS to the intrusive police measures imposed upon ENGLAND.

72. Defendants instead singled out ENGLAND, ordered him from the vehicle, physically took him by the arm, subjected him to a pat-down search, placed him in extremely tight handcuffs, and detained him for approximately thirty minutes.

73. No weapon was recovered from ENGLAND. Nor was any weapon ultimately recovered from the vehicle after TRAVIS consented to a search. ENGLAND was ultimately released without arrest.

74. Defendants' purported justifications for their actions—including the alleged observation that ENGLAND threw a firearm across the interior of a vehicle and the assertion that the vehicle was unregistered—were false and/or pretextual.

75. Defendants' disparate treatment of ENGLAND, together with the circumstances surrounding the detention and the absence of evidence substantiating the officers' stated suspicions, supports a reasonable inference that Defendants' actions were motivated, at least in part, by ENGLAND's race.

76. ENGLAND is informed and believes that Defendants intentionally discriminated against ENGLAND because of his race and intentionally subjected him to law-enforcement treatment materially different from that afforded to a similarly situated person present during the same encounter.

77. ENGLAND is informed and believes that race was a motivating factor in Defendants' decision to detain ENGLAND and/or in their decisions concerning the scope, duration, and substance of the law-enforcement activities imposed upon him after the detention began. Defendants thereby deprived ENGLAND of his right to equal protection of the laws secured by the Fourteenth Amendment to the United States Constitution.

78. As a direct and proximate result of the actions of these Defendants, ENGLAND suffered the violation of his constitutional rights. As a result of the actions or omissions of these Defendants, ENGLAND suffered physical, mental and emotional injuries, some of which are ongoing.

79. Defendants acted recklessly, with deliberate indifference to ENGLAND’s constitutional rights and should have punitive damages assessed against them. The acts

of these Defendants were willful, wanton, malicious and oppressive justifying the award of exemplary and punitive damages.

80. By virtue of the provisions of 42 U.S.C. § 1988, ENGLAND is entitled to an award of reasonable attorney's fees and costs, according to proof.

**VIII.**

**FIFTH CLAIM FOR RELIEF**

**MUNICIPAL LIABILITY-UNCONSTITUTIONAL CUSTOM OR POLICY**

**(42 U.S.C. § 1983)**

**(All Plaintiffs as Against Defendant City of Los Angeles)**

81. Plaintiffs re-allege and incorporate by reference every allegation contained in paragraphs 1 through 80.

82. On and before August 23, 2025, Defendants CITY OF LOS ANGELES and DOE SUPERVISORS 1-10 deprived Plaintiffs of their rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, of Plaintiffs, and of persons in her class, situation and comparable position in particular, knowingly maintained, enforced and applied an official policy or practice or custom recognized by the CITY OF LOS ANGELES and the LOS ANGELES POLICE DEPARTMENT.

83. Individual Defendants and DOES 1-10 acted under color of law.

84. Individual Defendants and DOES 1-10 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY OF LOS ANGELES.

85. On information or belief, individual Defendants and DOES 1-10 were not disciplined, reprimanded, retrained, suspended or otherwise penalized in connection with the violation of Plaintiffs' constitutional rights.

86. Plaintiffs are informed and believe that Defendant CITY OF LOS ANGELES maintained the following unconstitutional customs, practices, and policies:

a. Unreasonably and wrongfully detaining citizens or allowing the same, including unlawful or pretextual detentions of African American/Black males (i.e., racial profiling).

b. Employing and retaining as officers and other personnel, including individual Defendants and DOES 1-10, who Defendant CITY OF LOS ANGELES, at all relevant times, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written LAPD policies regarding the lawful detention of citizens and use of excessive force against citizens;

c. Inadequately supervising, training, controlling, assigning and disciplining LAPD officers and other personnel, including individual Defendants and DOES 1-10, who Defendant CITY OF LOS ANGELES knew, or in the exercise of reasonable care, should have known had dangerous propensities and character traits.

d. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by individual Defendants and DOES 1-10.

e. Failing to adequately discipline individual Defendants and DOES 1-10, for the above-referenced categories of misconduct, including "slap on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

f. Encouraging, accommodating, or facilitating a "code of silence" in which officers do not report other officers' errors, misconduct or crimes. Pursuant to this code

of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer questioned will claim ignorance of the other officer's wrongdoing;

g. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of incidents of unlawful detention, excessive force and racial profiling, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in unlawfully members of the community and using excessive force against members of the community;

h. Refusing to discipline, terminate or retrain the officers who make unlawful detentions; use excessive force; and/or racially profile people of color.

i. Having and maintaining an unconstitutional custom and practice of pretextual, unlawful detentions—including those based on race—use of excessive force, and covering up police misconduct of its officers. These customs and practices by CITY OF LOS ANGELES were condoned in deliberate indifference to the safety and rights of its community members, including Plaintiffs.

87. By reason of the stated policies, customs and practices of Defendants CITY OF LOS ANGELES, Plaintiffs suffered physical, mental and emotional injuries, some of which are ongoing.

88. Defendants CITY OF LOS ANGELES had either actual or constructive knowledge of the different policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, Defendant condoned, tolerated and, through actions and omissions, ratified such policies. Defendant also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and the constitutional rights of Plaintiffs and other individuals similarly situated.

89. Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendant CITY OF LOS ANGELES was affirmatively linked to, and were significantly influential forces behind Plaintiffs' injuries.

90. As a direct and proximate result of the actions of Defendant CITY OF LOS ANGELES, Plaintiffs suffered the violation of her constitutional rights. As a result of the actions or omissions of Defendant CITY OF LOS ANGELES, Plaintiffs suffered physical, mental and emotional injuries, some of which are ongoing.

91. By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant CITY OF LOS ANGELES acted with intentional, reckless, and callous disregard for the well-being of Plaintiffs and their constitutional rights. Defendants CITY OF LOS ANGELES' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

92. By virtue of the provisions of 42 U.S.C. § 1988, Plaintiffs are entitled to an award of reasonable attorney's fees and costs, according to proof.

## IX.

## SIXTH CLAIM FOR RELIEF

## MUNICIPAL LIABILITY-FAILURE TO TRAIN

**(42 U.S.C. § 1983)**

**(All Plaintiffs as Against Defendant City of Los Angeles)**

93. Plaintiffs re-allege and incorporate by reference every allegation contained in paragraphs 1 through 92.

94. DOES 1-10 acted under color of state law.

95. The acts of Defendants deprived Plaintiffs of their rights under the United States Constitution.

96. On information and belief, Defendant failed to properly and adequately train individual Defendants and DOES 1-10, including but not limited to, about what constitutes an unlawful detention, excessive force, and racial profiling.

97. The training policies of Defendant CITY OF LOS ANGELES were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including making lawful detentions; reasonably determining when the use of force is appropriate; treating all community members equally in lawfully performing their duties.

98. Defendant CITY OF LOS ANGELES was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

99. The failure of Defendant CITY OF LOS ANGELES to provide adequate training caused the deprivation of Plaintiffs' rights by individual Defendants and DOES 1-10; that is, Defendant CITY OF LOS ANGELES' failure to train is so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injuries to Plaintiffs

100. As a direct and proximate result of the actions of these Defendant CITY OF LOS ANGELES, Plaintiffs suffered the violation of their constitutional rights. As a result of the actions or omissions of these Defendant, Plaintiffs suffered physical, mental and emotional injuries, some of which are ongoing.

101. By virtue of the provisions of 42 U.S.C. § 1988, Plaintiffs are entitled to an award of reasonable attorney's fees and costs, according to proof.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

X.

**SEVENTH CLAIM FOR RELIEF**

**Violation of Bane Act – Cal. Civ. Code §52.1**

**(All Plaintiffs as against All Defendants)**

102. Plaintiffs re-allege and incorporate all of the allegations contained in paragraphs 1-101.

103. Defendants, while acting within the course and scope of their duties as LAPD officers, interfered with the rights of Plaintiffs to be free from unreasonable seizures [i.e., unlawful detention (ENGLAND), racial profiling (ENGLAND) and, excessive force (TRAVIS) by committing acts of coercion and/or intimidation.

104. THE CITY OF LOS ANGELES is vicariously liable for the wrongful acts of individual Defendants and DOES 1-10 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

105. As a direct and proximate result of the actions of these Defendants, Plaintiffs suffered the violation of their constitutional rights. As a result of the actions or omissions of these Defendants, Plaintiffs suffered physical, mental and emotional injuries, some of which are ongoing.

106. The acts of Defendants Officer Burgos, Officer Cardio, and DOES 1-10 were willful, wanton, malicious and oppressive justify the awarding of exemplary and punitive damages.

107. Plaintiffs are entitled to and do seek attorney's fees under the Tom Bane Act.

/ / /

/ / /

/ / /

## XI.

## EIGHTH CLAIM FOR RELIEF

## False Arrest/False Imprisonment

**(Plaintiff Jayden England as Against All Defendants)**

108. ENGLAND re-alleges and incorporates all of the allegations contained in paragraphs 1-107.

109. Officer Burgos, Officer Cardio and DOES 1-10, acting intentionally, and with conscious disregard for ENGLAND'S civil and constitutional rights, unlawfully detained him without reasonable suspicion that he was or had committed a crime or for any lawful purpose, causing him to be placed unlawfully under the control and custody of Defendants. Thus, Defendants caused him to be confined without lawful process or legal justification.

110. THE CITY OF LOS ANGELES is vicariously liable for the wrongful acts of Officer Burgos, Officer Cardio and DOES 1-10 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

111. As a direct and proximate result of the actions of these Defendants, ENGLAND suffered the violation of his constitutional rights. As a result of the actions or omissions of these Defendants, ENGLAND suffered physical, mental and emotional injuries, some of which are ongoing.

112. The acts of Defendants Officer Burgos, Officer Cardio and DOES 1-10 were willful, wanton, malicious and oppressive justify the awarding of exemplary and punitive damages.

/ / /

/ / /

/ / /

## XII.

## NINTH CLAIM FOR RELIEF

## Battery

**(Plaintiff LaTanya Travis as against Defendant Officer Burgos and the City of Los Angeles)**

113. TRAVIS re-alleges and incorporates all of the allegations contained in paragraphs 1-112.

114. Defendant Officer Burgos intentionally touched TRAVIS by forcefully and violently shoving her, causing her to lose her balance and injure her ankle.

115. TRAVIS did not consent to OFFICER BURGOS's physical contact. At the time of the physical contact, TRAVIS was observing and recording the detention of ENGLAND and was not interfering with the officers.

116. TRAVIS did not pose an immediate threat to Officer Burgos or any other person and was not attempting to flee. Under the circumstances confronting Officer Burgos, the use of physical force against TRAVIS was unnecessary and unreasonable. A reasonable person in TRAVIS ' position would have been offended or harmed by the unwanted and unjustified physical contact.

117. Officer Burgos’ intentional and unreasonable use of force constituted battery under California law.

118. Officer Burgos was acting within the course and scope of his employment as a law-enforcement officer when he committed the acts alleged herein.

119. To the extent authorized by California Government Code section 815.2 and other applicable law, the employing public entity is vicariously liable for Officer Burgos’ tortious conduct committed within the course and scope of his employment.

120. Officer Burgos' conduct was a substantial factor in causing harm and damages to TRAVIS.

/ / /

121. As a direct and proximate result of the actions of these Defendants, TRAVIS suffered the violation of her constitutional rights. As a result of the actions or omissions of these Defendants, TRAVIS suffered physical, mental and emotional injuries, some of which are ongoing.

122. The acts described in Section III of Defendants were outrageous, intentional, unlawful, malicious, and committed for the express purpose of causing TRAVIS to suffer mental anguish, emotional distress and represented conduct which goes beyond all possible bounds of decency.

123. The acts of Officer Burgos were willful, wanton, malicious and oppressive justify the awarding of exemplary and punitive damages.

## XIII.

## <u>TENTH CLAIM FOR RELIEF</u>

## <u>Intentional Infliction of Emotional Distress</u>

**(All Plaintiffs as against All Defendants)**

124. Plaintiffs re-allege and incorporate all of the allegations contained in paragraphs 1-123.

125. The acts described in Section III of Defendants were outrageous, intentional, unlawful, malicious, and committed for the express purpose of causing Plaintiffs to suffer mental anguish, emotional distress and represented conduct which goes beyond all possible bounds of decency.

126. As a direct and proximate result of the actions of these Defendants, Plaintiffs suffered the violation of their constitutional rights. As a result of the actions or omissions of these Defendants, Plaintiffs suffered physical, mental and emotional injuries, some of which are ongoing.

127. The acts of Officer Burgos, Officer Cardio and DOES 1-10 were willful, wanton, malicious and oppressive justify the awarding of exemplary and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment against all Defendants, including DOES 1 through 10, inclusive, as follows:

1. For an award of general and special damages according to proof;
2. For punitive damages against the individual defendants in their individual capacities according to proof as to all claims;
3. For attorney's fees according to proof as to only the first, second, third, fourth, fifth, sixth and seventh claims;
4. All prejudgment interest under applicable state and/or federal law;
5. For costs of suit incurred; and
6. For such other and further relief as the Court deems just and proper.

Dated: September 7, 2026

ROBERT STANFORD BROWN, APC

By: /S/ Robert S. Brown

Robert S. Brown, Esq.
Attorney for LaTanya Travis and Jayden England

## DEMAND FOR JURY TRIAL

Plaintiffs LATANYA TRAVIS and JAYDEN ENGLAND request that this action be determined by trial by jury.

Dated: September 7, 2026

ROBERT STANFORD BROWN, APC

By: /S/ Robert S. Brown

Robert S. Brown, Esq.
Attorney for LaTanya Travis and Jayden England